***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Rowell and the briefs and arguments before the Full Commission. The appealing party has shown good grounds to reconsider the evidence, and upon reconsideration, the Full Commission affirms in part and modifies in part the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matter of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS *Page 2 
1. All parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction over this matter.
2. The parties are subject to and bound by the North Carolina Workers' Compensation Act.
3. All parties have been properly designated and there is no question as to the joinder or non-joinder of parties.
4. An employee-employer relationship existed between plaintiff and defendant-employer on the relevant dates in question.
5. Defendant-employer is self-insured with ESIS as the third-party administrator.
6. Plaintiff's average weekly wage is $796.93, yielding a compensation rate of $531.31 per week.
7. The following were submitted by the parties as exhibits at the Deputy Commissioner's hearing:
 (a) Stipulated exhibit — Pre-trial Agreement.
 (b) Stipulated exhibit — Plaintiff's medical records from Novant Health, Total Spine Specialists, Charlotte Orthopedic Specialists/Ortho Carolina, Neurological Spinal Surgery, and Dr. Donald Fraser.
 (c) Plaintiff's exhibit — Curriculum vitae of Dr. Lois Kathleen Osier.
 (d) Defendants' exhibit — Ergonomic Job Analysis Report.
 (e) All Industrial Commission forms and filings.
8. The issue before the Full Commission is whether plaintiff has shown that she continues to be disabled as a result of her specific traumatic incident on November 29, 2004.
 *********** *Page 3 RULINGS ON EVIDENTIARY MATTERS
On July 18, 2007, defendant made a motion to admit additional evidence or remand to the Deputy Commissioner for additional testimony regarding whether plaintiff's current wage loss is the result of her compensable specific traumatic incident or her non-compensable bilateral epicondylitis. The Full Commission denies defendant's motion.
 ***********
Based upon the competent evidence of record herein, the Full Commission makes the following:
 FINDINGS OF FACT
1. As of the date of the Deputy Commissioner's hearing, plaintiff was approximately 57 years of age, having a date of birth of September 3, 1947. Plaintiff was employed as a retail salesperson for defendant-employer since November 2, 1989.
2. In March 2003, Dr. Stephen Hipp diagnosed plaintiff with lumbar spinal stenosis at L4-L5. On October 3, 2003, Dr. Hipp performed decompression surgery between L4-L5.
3. From approximately November 1989 through October 2004, plaintiff worked in the fragrance department. Plaintiff's job duties in the fragrance department included selling perfumes and related items, and moving fragrance from a storage drawer onto the counter.
4. In October 2004, plaintiff was transferred to the Contemporary and BCBG merchandise departments, which included merchandise for younger persons. Her job duties in these departments included selling merchandise, marking down merchandise, moving merchandise and stocking merchandise on racks.
5. On November 29, 2004, plaintiff was moved to the women's merchandise department, where her job duties included selling women's merchandise, marking down *Page 4 
merchandise, cleaning the fitting rooms and moving racks of merchandise. The merchandise in the women's department was heavier than the merchandise plaintiff had to move in the Contemporary and BCBG departments. In the women's department, plaintiff helped customers in the fitting room. After a customer was finished using the fitting room, plaintiff cleaned up the fitting room, took merchandise back to the floor and re-hung the merchandise.
6. When stocking merchandise, plaintiff unpacked merchandise, put the merchandise on hangers and hung the merchandise on a "Z bar," which is a long, rolling rack with a row of clothing across the top. Plaintiff then removed the clothing from the Z bar and put it on the regular sales racks. Plaintiff moved clothes from the sales racks to the back of the department to make room for the new merchandise on the Z bar. Plaintiff would often carry a load of clothing consisting of ten to 15 pieces from one rack to another. Plaintiff was also required to reach up to hang the loads of clothing that she was moving. After plaintiff moved the clothing off the sales racks, she would have to lift the clothing up and off the Z bar. The Z bars were usually six feet high, but could be as high as seven feet tall. Plaintiff is approximately five feet and one inch and had to strain to reach up over her shoulder to get the bundle of clothing to carry it to the sales rack.
7. When marking down merchandise, plaintiff's job duties included the use of a scanning device or gun to scan the price. After the merchandise was scanned, plaintiff printed markdown tickets, peeled off the new tickets and applied the new tickets to the merchandise.
8. Allen Lucars, the sales manager for defendant-employer's women's department, corroborated plaintiff's testimony regarding her job duties and further testified that plaintiff's job duties included spending approximately 70 percent of her time moving merchandise at the beginning of each week. *Page 5 
9. On November 29, 2004 and approximately one and a half to two hours into her shift, plaintiff experienced significant pain in her right arm and back while moving clothing from several Z bars to sales racks. Plaintiff notified a manager that she began experiencing pain in her right arm and back while moving clothing from the Z bar racks.
10. On November 30, 2004, plaintiff presented to her primary care physician, Dr. Marshall McMillan. Dr. McMillan noted that plaintiff was experiencing pain in her right forearm and elbow, as well as her lumbar spine radiating into her buttocks. Plaintiff also reported feeling a tingling sensation in her right arm. Dr. McMillan instructed plaintiff to apply ice, do stretching exercises and use a tennis elbow strap on her right arm. He also referred plaintiff to Dr. John Welshofer for further evaluation of her back.
11. Plaintiff reported to work on November 30, 2004, despite her pain. Plaintiff continued to work until late December 2004.
12. Plaintiff, who is right hand dominant, began experiencing pain in her left arm and hand after using her left hand and arm more often to compensate for the pain she was experiencing in her right arm. On December 27, 2004, plaintiff sought medical treatment for the pain in both arms with Dr. McMillan. Plaintiff underwent a steroid injection and was written out of work from December 24, 2004 through January 3, 2005.
13. On December 22, 2004, defendant filed a Form 19 Employer's Report of Injury and a Form 61 Denial of Workers' Compensation Claim.
14. On March 2, 2005, plaintiff filed a Form 18 Notice of Accident and a Form 33 Request for Hearing. On April 7, 2005, defendant filed a Form 33R Response to Request for Hearing. *Page 6 
15. Plaintiff sought treatment with Dr. John Welshofer on January 24, 2005. Dr. Welshofer diagnosed plaintiff with degenerative disc disease at the L3, L4 and L5 levels, discogenic back pain and possibly an annular tear. Dr. Welshofer released plaintiff to return to work, gave her restrictions of no lifting, pulling, pushing or carrying greater than ten pounds with occasional bending and position changes as necessary, and recommended physical therapy.
16. On September 1, 2005, Dr. Welshofer ordered an MRI of the lumber spine and prescribed Skelaxin and Ultracet. Plaintiff returned to Dr. Welshofer on September 15, 2005, to discuss the MRI finding. Dr. Welshofer noted that there appeared to be a L4-5 central disc herniation and some stenosis. He further opined that this diagnosis was unrelated to her prior condition for which she had surgery. Dr. Welshofer recommended epidural injections.
17. Dr. Welshofer again examined plaintiff on April 5, 2006. Plaintiff reported that she continued to feel significant back pain. Dr. Welshofer felt that plaintiff continued to need physical therapy.
18. At his deposition, Dr. Welshofer testified that plaintiff reported a significant change in her work duties on November 29, 2004. Dr. Welshofer opined that plaintiff's disc herniation was more likely than not caused or aggravated by the change in her job duties on November 29, 2004.
19. Dr. Hipp testified that if a new MRI showed a herniation at L3, L4 or L5, these herniations would be unrelated to the conditions for which he surgically treated plaintiff in 2003.
20. On March 10, 2005, Dr. McMillan referred plaintiff to Dr. Lois Osier of OrthoCarolina. On April 1, 2005, Dr. Osier found that plaintiff was tender in both arms and her right elbow. Dr. Osier also noted that plaintiff found it difficult to work with her injuries and that she felt she had not been able to protect herself from heavy lifting. Dr. Osier gave plaintiff a *Page 7 
cortisone injection and wrote a prescription for Darvocet. Dr. Osier also restricted plaintiff from lifting at work.
21. On May 2, 2005, plaintiff returned to Dr. Osier's office reporting severe pain in her right arm. Dr. Osier noted that plaintiff also had a significant decrease in the strength in her right hand and had not been able to return to work since April 11, 2005. The doctor noted, "I do continue to feel that her episodes of pain began following her switch in jobs to having to carry significant amount of clothes." Dr. Osier prescribed another cortisone injection and wrote plaintiff out of work until July 2, 2005.
22. Plaintiff continued treatment and cortisone injections with Dr. Osier. Dr. Osier continued to write plaintiff out of work.
23. On August 29, 2005, Dr. Osier discussed the possibility of surgical repair of the elbow. On October 19, 2005, Dr. Osier performed a left epicondylitis release due to plaintiff's long-standing symptoms of left lateral epicondylitis.
24. On November 23, 2005, Dr. Osier recommended that plaintiff begin strength training for her left arm. Dr. Osier examined plaintiff on January 4, 2006, and noted that plaintiff had achieved full range of motion in the left arm. Dr. Osier wrote that plaintiff had been out of work since April 11, 2005, and that she anticipated plaintiff being out of work until at least June 1, 2006.
25. Dr. Osier testified that plaintiff's job duties contributed to her developing bilateral epicondylitis and subsequently continued to aggravate her bilateral epicondylitis. Dr. Osier, however, did not testify that plaintiff's job duties placed her at an increased risk over the general population of contracting her bilateral epicondylitis. *Page 8 
26. An ergonomic specialist, Alan Gorrod, visited defendant-employer's store to assess the ergonomic risk posed by plaintiff's job duties. Mr. Gorrod analyzed the tasks associated with a sales associate in the women's department and concluded that these tasks did not present an adverse ergonomic impact. He further concluded that none of the tasks would place an individual at an increased risk for developing carpal tunnel syndrome, tendonitis or any other hand or arm problems. Mr. Gorrod also considered that on November 29, 2004, plaintiff had to unload six Z bars rather than the usual two or three Z bars that she typically unloaded. Mr. Gorrod opined that over an extended period of time, this amount of work could increase the risk for developing tendonitis; however, a one-time occurrence would not increase the risk for cumulative trauma disorders.
27. Mr. Gorrod also testified about the three ergonomic risk factors of repetition, forceful exertion and range of motion. He determined that the ergonomic risk factors of the position were all low. Based upon his ergonomic analysis of woman's clothing sales associates, Mr. Gorrod concluded that the job duties would not place an employee at an increased risk for developing tendonitis, carpal tunnel syndrome or any other hand or arm condition.
28. The Commission finds that plaintiff reached maximum medical improvement to her back on January 24, 2005, when she was released to return to light work with restrictions by Dr. Welshofer. However, plaintiff has not presented any evidence that after January 24, 2005, she made a reasonable effort to find employment within her restrictions. Any disability plaintiff had after January 24, 2005 was a result of her non-compensable bilateral epicondylitis. 29. The Commission finds that on November 29, 2004, plaintiff sustained a compensable specific traumatic incident arising out of and in the course of her employment with defendant-employer while moving merchandise from Z racks to sales racks. However, the *Page 9 
Commission also finds that plaintiff failed to prove by the greater weight of the evidence that she contracted a compensable occupational disease as a result of her job duties with defendant-employer. Specifically, plaintiff failed to present sufficient evidence that her job duties placed her at an increased risk over the general population for contracting bilateral epicondylitis.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On November 29, 2004, plaintiff sustained a compensable specific traumatic incident to her back arising out of and in the course of her employment with defendant-employer while moving merchandise from Z racks to sales racks. N.C. Gen. Stat. § 97-2 (6).
2. Aggravation of a pre-existing condition that results in loss of wage earning capacity is compensable. Smith v. Champion Int'l, 134 NC. App. 180, 182, 517 S.E.2d 164, 166 (1999). Furthermore, "[t]he work-related injury need not be the sole cause of the problems to render an injury compensable. If the work-related accident contributed in some reasonable degree to plaintiff's disability, she is entitled to compensation." Id. at 182. Thus, on November 29, 2004, plaintiff sustained a compensable aggravation of her degenerative disc disease arising out of and in the course of her employment with defendant-employer when she suffered an injury to her back while moving merchandise from Z racks to sales racks. N.C. Gen. Stat. § 97-2 (6).
3. To prove a compensable occupational disease pursuant to N.C. Gen. Stat. § 97-53(13), plaintiff must establish that her condition meets three criteria: (1) the condition is "characteristic of persons engaged in the particular trade or occupation in which the [plaintiff] is engaged," (2) the condition is "not an ordinary disease of life to which the public generally is *Page 10 
equally exposed with those engaged in that particular trade or occupation," and (3) there is a "causal connection between the disease and the [plaintiff's] employment" in that the employment significantly contributed to or was a significant causal factor in the disease's development. Rutledge v. Tultex Corp., 308 N.C. 85, 93, 301 S.E.2d 359,365 (1983). The first two requirements of this test are met if plaintiff can show that the employment created an increased risk of contracting the particular disease than the general public. Id. at 94,301 S.E.2d at 365. In the present case, plaintiff failed to prove by the greater weight of the evidence that she was at an increased risk of developing bilateral epicondylitis due to her employment. Hansel v.Sherman Textiles, 304 N.C. 44, 283 S.E.2d 101
(1981).
4. In order to meet the burden of proving continuing disability, plaintiff must prove that she was incapable of earning pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury wages was caused by plaintiff's injury. Hilliard v. ApexCabinet Co., 305 N.C. 593, 290 S.E.2d 682 (1982). An employee may meet the initial burden of production by producing one of the following: (1) medical evidence that she is physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that she is capable of some work, but that she has, after a reasonable effort, been unsuccessful in her efforts to obtain employment; (3) evidence that she is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment; or (4) evidence that she has obtained other employment at wages less than her pre-injury wages. Demery v.Perdue Farms, Inc., 143 N.C. App. 259, 545 S.E.2d 485 (2001);Russell v. Lowes Product Distribution, 108 N.C. App. 762, 425 S.E.2d 454
(1993). When a plaintiff meets her burden of showing disability, the burden then shifts to defendants to produce evidence that suitable jobs are available for the employee *Page 11 
and that the employee is capable of obtaining a suitable job, taking into account both physical and vocational limitations. Demery v. PerdueFarms, Inc., supra.
5. In the present case, plaintiff reached maximum medical improvement on January 24, 2005 and was released to return to light work with restrictions. However, plaintiff did not meet her burden to prove that after January 24, 2005, she was unable to obtain employment after a reasonable effort or that it was futile for her to seek employment because of other factors. Plaintiff was capable of some work and no doctor took her out of work for her compensable back condition. Plaintiff's regular job with defendant-employer met her restrictions; however, she did not return to work due to her non-compensable bilateral epicondylitis. N.C. Gen. Stat. § 97-29; Russell v. Lowes ProductDistribution, supra.
6. As a result of her compensable injury, plaintiff is entitled to temporary total disability compensation at a rate of $531.31 from November 29, 2004 until January 24, 2005, when plaintiff was released to return to work by Dr. Welshofer for her back condition. N.C. Gen. Stat. § 97-29.
7. The medical treatment plaintiff received as a result of her compensable specific traumatic incident to her back was reasonably required to effect a cure, provide relief and lessen her disability and plaintiff is entitled to payment for this medical treatment. N.C. Gen. Stat. §§ 97-2(19); 97-25.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD 1. Plaintiff's claim for bilateral epicondylitis is DENIED. *Page 12 
2. Subject to the attorneys' fee approved below, defendant shall pay plaintiff temporary total disability compensation at a rate of $531.31 from November 29, 2004 until January 24, 2005. This amount has accrued and shall be paid in a lump sum.
3. Defendant shall pay for medical expenses incurred or to be incurred as a result of plaintiff's compensable injury for so long as such treatment may reasonably be required to effect a cure, provide relief, or lessen the period of disability.
4. A reasonable attorney's fee of 25% of the compensation awarded herein is hereby approved for plaintiff's counsel and shall be deducted from the accrued benefits and paid directly to plaintiff's counsel.
5. Defendant shall pay the costs.
This 24 day of January, 2008.
 S/______________________
 LAURA KRANIFELD MAVRETIC
 COMMISSIONER
CONCURRING:
 S/_____________ PAMELA T. YOUNG CHAIR
 S/_______________ DIANNE C. SELLERS COMMISSIONER *Page 1